**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHERI SPIEWAK,<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM DESTINATIONS, INC.,<br><br>Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 20-13643 (KMW-EAP)<br><br>**OPINION** |

Appearances:

Michael Christopher Groh, Esquire
Michael P. Murphy, Esquire
Murphy Law Group, LLC
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd
Philadelphia, PA 19103
        *Counsel for Plaintiff Sheri Spiewak*

John K. Bennett, Esquire
Jackson Lewis P.C.
200 Connell Drive
Suite 2000
Berkeley Heights, NJ 07922
        *Counsel for Defendant Wyndham Destinations, Inc.*

**WILLIAMS, District Judge:**

I.    **INTRODUCTION**

      This matter comes before the Court on the Motion for Summary Judgment ("MSJ") [ECF

No. 30] filed by Defendant Wyndham Destinations, Inc. ("Defendant" or "Wyndham") in

connection with Plaintiff Sheri Spiewak's ("Plaintiff" or "Spiewak") Complaint alleging that

Wyndham violated: (1) the New Jersey Law Against Discrimination ("NJLAD") by discriminating and retaliating against her based on gender and pay; and (2) the New Jersey Equal Pay Act ("NJEPA") by discriminating against her through Defendant's failure to provide her equal pay to that of similarly situated male coworkers.   Plaintiff opposes Defendant's MSJ.   The Court reviewed the submissions of the parties and considered the MSJ without oral argument pursuant to Federal Rule of Civil Procedure 78(b).   For the reasons articulated below, Defendant's MSJ is granted, in part, and, denied, in part.[1]

## II.   BACKGROUND[2]

The Court will recount the undisputed facts as derived from the Local Rule 56.1 statements of undisputed material fact.[3]   The Court will also set forth additional and disputed facts as

---

[1]  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

[2]  For ease of reference, the Court will cite to court documents relating to these motions as follows:
- "Compl." refers to the Complaint (ECF No. 1).
- "MSJ" refers to Wyndham's Motion for Summary Judgment (ECF No. 30).
- "Def.'s Br." refers to Wyndham's Brief in Support of the Motion for Summary Judgment (ECF No. 30-1).
- "Def.'s SMF" refers to Wyndham's Statement of Material Facts Not in Dispute (ECF No. 30-2).
- "Def.'s Ex. __" refers to Wyndham's Exhibits 1 through 20 (ECF Nos. 30-4 through 30-6).
- "Pl.'s Opp'n Br." refers to Spiewak's Opposition to Wyndham's MSJ (ECF No. 33-1).
- "Groh Decl." refers to the Declaration of Michael Groh, Esq. (ECF No. 33-4).
- "Pl.'s RSMF" refers to Spiewak's Response to Defendant's SMF (ECF No. 33-2).
- "Pl.'s Ex. __" refers to Spiewak's Exhibits 1 through 15 (ECF No. 33-5).
- "Pl.'s SSMF" refers to Spiewak's Supplemental Statement of Materials Facts (ECF No. 33-3).
- "Def.'s Reply Br." refers to Wyndham's Reply Memorandum (ECF No. 36).
- "Bennett Decl." refers to the Declaration of John K. Bennett, Esq. (ECF No. 36-3).
- "Def.'s RSSMF" refers to Wyndham's Response to Plaintiff's Supplemental Statement of Material Facts (ECF No. 36-2).
- "Def.'s Supp. Ex. __" refers to Wyndham's Exhibits A through K (ECF Nos. 36-4 through 36-5).

[3]  The Court must address some issues regarding the Local Rule 56.1 statements.   First, the Court will not consider Defendant's Reply Statement to Plaintiff's Response to Defendant's Statement of Material Facts (ECF No. 36-1) as this District's Local Rules do not permit a reply.   L. Civ. R. 56.1(a); L. Civ. R. 56.1(a), cmt. C ("the moving party is not permitted to reply to the non-moving party's responding statement); *see also Gupta v. Siemens Healthineers*, No. 19-3833, 2022 WL 807377, at *1, n.1 (D.N.J. Mar. 17, 2022).   Second, the Court disregards any legal argument contained in the Local Rule 56.1 statements.   On this issue, the Court specially rejects Defendant's repeated

necessary.   Finally, the Court will focus on facts germane to the relevant period, as articulated by the parties, relating to the claims: July 1, 2018 to March 1, 2020.

In March of 2003, Fairfield Resorts (Wyndham's Predecessor[4]), which later became Defendant's Atlantic City site – Wyndham Skyline Tower, hired Plaintiff as a Sales Representative.[5]   Def.'s SMF ¶ 12.   By September 2015, Plaintiff was promoted to Sales Manager, reporting to Adam DeMarco ("DeMarco").[6]   Def.'s SMF ¶ 38.   Before delving deeply into the facts concerning Plaintiff's Sales Manager position, the Court will first discuss facts surrounding Defendant's compensation structure, then the Court will discuss facts surrounding Plaintiff's Sales Manager and Selling Manager positions.

   *a.   Defendant's Compensation Structure*

---

reference to Plaintiff's reliance on self-serving statements in its RSMF.   This statement runs afoul of Local Rule 56.1 which prohibits the inclusion of legal argument or conclusions of law within Local Rule 56.1 statements.   L. Civ. R. 56.1.   Moreover, the cases also do not stand for the propositions for which Defendant claims.   Finally, facts in the Local Rule 56.1 statements unsupported by a citation to the record may be deemed admitted for purposes of this MSJ. L. Civ. R. 56.1

[4] There is a dispute about what entity employed Spiewak.   Defendant indicates it is incorrectly named in the caption as "Wyndham Destinations, Inc."   Def.'s SMF ¶ 1. Defendant contends that Plaintiff was employed by Wyndham Vacation Ownership, Inc., which at the time was a subsidiary of Wyndham Destinations, Inc. *Id.* Spiewak, citing to deposition testimony, states that she was employed by Wyndham Destinations, Inc. (previously named Wyndham Vacation Ownership, Inc.).   Pl.'s RSMF ¶ 1.

[5] While employed by Defendant, Plaintiff received Defendant's policies prohibiting discrimination and harassment; Defendant's Employee Policy Handbook, containing a complaint-reporting procedure for employees who believed they had been subjected to discrimination, harassment, bullying, and/or retaliation; annual harassment training; and WVO's Rules of Engagement, relating to performance, attendance, dress code, vacations, and other matters.   Def.'s SMF ¶¶ 3-6.   Plaintiff never complained to Defendant's Human Resources Manager, Bernadette Dolan-DiPalma, that she believed that Adam DeMarco, the Defendant's Sales Director for the Atlantic City site, was treating her less favorable than Senior Sales Manager, Anthony DiMaggio ("DiMaggio").   Def.'s SMF ¶ 9.   However, it is disputed whether Plaintiff complained to DiPalma about DeMarco's failure to assign more Sales Representatives to her team because of her gender.   Def.'s SMF ¶ 10; Pl.'s RSMF ¶ 10.

[6] Plaintiff was initially promoted to a Frontline Sales Manager position in 2005, however, performance issues resulted in her being demoted to Senior Sales Representative in July 2010.   Def.'s SMF ¶¶ 13, 25-27.

As a Sales Manager, Plaintiff, and all other Sales Managers, were subject to the same Sales Manager Compensation Plan ("Compensation Plan").   Def.'s SMF ¶ 37.   To this end, Sales Managers received the same base salary and any differences in earnings were due to their sales commissions, based upon the sales volume of their sales team.   Def.'s SMF ¶¶ 45-46.   There were periodic amendments to the Compensation Plan to reflect increases or decreases to the monthly volume hurdles based upon the applicable season (i.e., in February 2017, monthly volume hurdles were decreased due to the slower season).   Def.'s SMF ¶¶ 54-58.   Finally, the Compensation Plan provided for "takeover commission," wherein a Sales Manager received compensation for owner and non-owner client tours and the resulting sale.   Def.'s SMF ¶ 20.

Sales Representatives and Managers were either "In-House" or "Frontline."   Frontline Sales Representatives and Managers focus on selling timeshares to non-owners, whereas individuals on the "In-House" team focus on sales to existing owners and upgrading existing ownership of timeshares.   Def.'s SMF ¶ 14.   Sales, in terms of dollar amount, and closing percentages are higher on the "In-House" side, but a Frontline Sales Representative would not necessarily have lower closing percentages as compared to In-House representatives because it depends on an individual's sales performance.   Def.'s SMF ¶ 15.   If a Sales Representative or Sales Manager has better sales performance, the individual would have higher production numbers, or a higher sales Volume Per Guest ("VPG").   Def.'s SMF ¶ 16.   The sales metric Average Per Guest ("APG") is a measurement of a Sales Representatives' average amount of sales per guest tours and is used to evaluate minimum performance standards of Sales Representatives, along with VPG.   Def.'s SMF ¶ 17.

     *b.  Sales Manager Position*

After assuming the Sales Manager position in 2015, Plaintiff was responsible for leading a team.    The quality and quantity of a Sales Manager's team may impact the Sales Manager's commissions.    Having fewer Sales Representatives on one team versus another may decrease the number of opportunities for a team to make deals.    Pl.'s SSMF ¶ 25; Def.'s RSSMF ¶ 25. Additionally, a team with more Sales Representatives enjoys an increased number of tours and, in turn, an increased number of opportunities to make deals; more deals on a Sales Manager's team means that the Sales Manager receives override and takeover commissions.    Pl.'s SSMF ¶¶ 27-28.

Prior to June of 2021, DeMarco made decisions on team assignment and same were influenced by various factors.    Pl.'s Ex. 3, DeMarco Dep. 37:8 to 38:10.    For instance, if a Sales Manager recruited a Sales Representative into the organization, otherwise known as a "prep," then that Sales Representative would be put on that Sales Manager's team.    *Id.* at 37:18-24. Similarly, if a Sales Representative recruited a friend or family member to join the organization, the new Sales Representative would join the same team as the recruiting Sales Representative. *Id.* at 38:1-8.    In June 2021, a rotation system was implemented to determine the assignment of incoming Sales Representatives.    *Id.* at 36:1-25.    Moreover, Defendant maintained an Atlantic City Sales ID Table ("Sales Table") created and periodically updated to reflect changes made to the assignment of Sales Representatives at Defendant's Atlantic City location, with a breakdown by Sales Manager.    Pl.'s SSMF ¶ 36.    The Sales Table was updated approximately every two weeks, but a new Sales Table would not be circulated if there were no changes to the roster during the intervening period.    Pl.'s SSMF 37    The parties dispute the interpretation of the Sales Tables as reflecting that Plaintiff consistently had less Sales Representatives than other males.

Nonetheless, it is undisputed that Anthony DiMaggio ("DiMaggio") generally had more Sales Representatives assigned to his team than Plaintiff.   Pl.'s SSMF ¶ 26.

Plaintiff experienced performance issues in her role as a Sales Manager.   Plaintiff received written warnings in August 2016 and in May 2017.   Def.'s SMF ¶ 52, 29.   The May 2017 written warning corrective action followed a "secret shop," noting that it was "the most serious correction taken, just short of dismissal."   Def.'s SMF ¶¶ 59-60.   In January 2018, based on her 2017 performance wherein she failed to meet her minimum VPG for ten out of twelve months, Plaintiff was placed on a performance improvement plan ("PIP").   Def.'s SMF ¶¶ 60-63.   Additionally, in August 2019, during one of the Sales Department's regular meetings about performance, DeMarco told Plaintiff she needed to improve her sales closing percentages, having had her worst two months with Defendant in July and August 2019.[7]   Def.'s SMF ¶¶ 66-68.   In January 2020, based on her performance in 2019, Plaintiff was again placed on a PIP, noting that her performance was well below the budgeted VPG.   Def.'s SMF ¶¶ 71-72.

c. *Selling Manager*

While on the January 2020 PIP, Plaintiff applied for a Selling Manager position.   By way of background, the Selling Manager position was held and vacated by Taylor Moore (male) ("Moore").   Moore became the Selling Manager in January 2018; it was a newly created position. Pl.'s SSMF ¶ 2.   Moore's compensation included a salary, for at least some portion of his time as Selling Manager and override commission on deals completed by Frontline Sales Representatives.[8]

---

[7] Defendant states that around this time period four Sales Representatives requested to be removed from Plaintiff's team; this fact is disputed.   Def.'s SMF ¶ 69; Pl.'s RSMF ¶ 69.

[8] The details surrounding Moore receiving a salary are disputed.   Defendant maintains that Moore's receipt of a

Pl.'s SSMF ¶¶ 3-4.    In May 2019, DeMarco instructed that Moore receive manager takeover

commission which may have otherwise gone to the Sales Managers.    Pl.'s SSMF ¶ 13.

      Plaintiff applied for Defendant's February 2020 job posting for the Selling Manager

position after Moore left the company.    Pl.'s SSMF ¶ 20-21.    A copy of the job posting

contained in the record advertised a yearly salary as part of the position's compensation.[9]    Pl.'s

SSMF ¶ 21.    Plaintiff was hired for the Selling Manager position effective March 1, 2020.[10]

Def.'s SMF ¶ 77.    Another woman, Qiana Reed ("Reed"), was also chosen for the position.

Def.'s SMF ¶¶ 78, 81.    Neither Plaintiff nor Reed received salaries and there are disputes about

whether Plaintiff and Reed had less Sales Representatives than Moore or received takeover

commission like Moore.    Def.'s SMF ¶¶ 81; Pl.'s SSMF ¶¶ 15, 18, 19.

## III.    LEGAL STANDARD

      Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the

outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416

(3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by*

*& through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is

---

salary was a system error while Plaintiff points to facts confirming that Defendant could not identify if the error was
corrected or if Moore was made to return the money.    Pl.'s SSMF ¶¶ 5-12; Def.'s RSSMF ¶¶ 5-12.

[9] Defendant points to testimony that the inclusion of a yearly salary in the job posting was an error.    Def.'s RSSMF ¶
21.

[10] Plaintiff was only in this position from March 2020 until April 2020 due to Defendant's operations being impacted
by COVID-19.    Def.'s SMF ¶ 84.

material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact.   *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.    DISCUSSION

As an initial matter, there are several points argued in Defendant's moving brief which Plaintiff concedes.   First, Plaintiff concedes that Defendant is entitled to summary judgment regarding her claims for retaliation under the NJLAD (contained within Count One) and the NJEPA (contained within Count Two) and unequal wages as a Sales Manager under the NJEPA (contained within Count Two).   Pl.'s Opp'n Br. 2, n. 2.   Accordingly, summary judgment is

8

granted as to those claims, thus, the Court will not consider Defendant's arguments relating to these claims.    Second, Defendant argues that Plaintiff cannot seek retroactive application of the NJEPA.    However, Plaintiff contends that she never pled that the NJEPA should be applied retroactively and confirms that the scope of Plaintiff's NJEPA claim is limited to July 1, 2018 through March 1, 2020.    Pl.'s Opp'n Br. 24.

### A.    NJEPA

Plaintiff contends that Defendant violated N.J.S.A. 34:11-56.2 in connection with her role as Selling Manager.[11]    Compl. ¶ 77-82.    Plaintiff alleges that Defendant paid her differently for performing the same job as her male predecessor, Mr. Moore.    Pl.'s Opp'n Br. 26; Pl.'s Opp'n Br. § II(A)(1)(b).    Plaintiff contends that Moore received a salary and takeover commission compensation; Plaintiff did not receive either type of compensation.    *Id.*    Plaintiff also argues that she had to share Sales Representatives with another female Selling Manager who were previously assigned to Moore alone.    Pl.'s Opp'n Br. 13.    Defendant contends that Mr. Moore's receipt of a salary was a payroll error and there is testimony indicating that the takeover commission compensation should have been the same, citing to DeMarco's testimony that Plaintiff should have received the commission.    Def.'s Reply Br. 12-14.    Defendant argues that even assuming that Mr. Moore received differential compensation, it was based on a factor other than gender because it is undisputed that the Selling Manager position does not come with a salary, and commissions are based on sales under the written Compensation Plan.    *Id.*

---

[11] N.J.S.A. § 34:11-56.8 provides a private right of action for enforcement of section 34:11-56.2.

Generally, courts considering NJEPA claims analyze such claims under the framework of the federal EPA, 29 U.S.C. § 206(d), applying a "two-step burden shifting paradigm." *Puchakjian v. Twp. of Winslow*, 804 F. Supp. 2d 288, 294 (D.N.J. 2011), *aff'd,* 520 F. App'x 73 (3d Cir. 2013).   The first step requires plaintiff to establish a prima facie case of discrimination by showing that "employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir.2000).   Thereafter, the burden shifts to the defendant to show that one of four affirmative defenses apply: "(i) a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex."   *Id.*   To prevail on summary judgment, "the employer must prove at least one affirmative defense 'so clearly that no rational jury could find to the contrary.'"   *Id.*

Here, Plaintiff has adduced enough evidence to state a *prima facie* case under the NJEPA. First, Plaintiff was Mr. Moore's successor in the Selling Manager position; thus, it was the same position – hence, the same skill, effort, and responsibility.[12]   Second, although Defendant contends that it was an error, for purposes of Plaintiff stating a *prima facie* case, it is undisputed that Mr. Moore received differential pay in the form of a salary.   Def.'s Ex. 6, 23:6-25:12; Pl.'s

_____

[12] The Court notes that effective July 1, 2018, New Jersey implemented the Diane B. Allen Equal Pay Act ("Allen Equal Pay Act"), codified at N.J.S.A. § 34:11-56.13, expanding equal pay protections already existing by prohibiting pay inequity to any member of a LAD-protected class, performing *substantially similar work*.   *See* State of New Jersey, Office of the Attorney General, *Guidance on the Diane B. Allen Equal Pay Act*, *030220-Equal-Pay-Act-Guidance-Appendices-Only.pdf (nj.gov)*, Mar. 2020. Thus, the Allen Equal Pay Act now provides broader protection than the federal EPA by protecting any member of a protected class for work that is substantially similar, not equal. Both Plaintiff and Defendant cite to standards evaluating claims under 34:11-56.2.   Thus, for purposes of this MSJ, because Plaintiff was engaged in equal work to her predecessor, Mr. Moore, Plaintiff establishes either standard, equal or substantially similar work.

10

Ex. 1, 26:6-16.    Moreover, while the Selling Manager job posting reflected that it was a salaried

position, Pl.'s Ex. 2, Spiewak-0222, Plaintiff did not receive a salary.    Def.'s Ex. 6, 22:22-25.

Thus, Plaintiff states a *prima facie* case.

The Court considers Defendant's argument that any salary or takeover compensation

payments were for reasons other than sex and finds that Defendant fails to prove the affirmative

defense "so clearly that no rational jury could find to the contrary."    First, providing all

reasonable inferences to Plaintiff, the record evidence demonstrates material issues of fact relating

to whether Mr. Moore's receipt of a salary was an error.    Succinctly stated, while Defendant

contends that it erroneously paid Mr. Moore a salary, testimony revealed that neither DeMarco or

DiPalma could confirm when the "erroneous" salary payments began or ended.    Moreover, while

Defendant claims the salary issue was corrected, the cited record evidence, Ms. DiPalma's

testimony, contradicts this contention.    Ms. DiPalma testified as follows:

> Question: What did you tell her about the issue with the salary being paid to Taylor
> Moore?
> Ms. DiPalma: I just said to her that we received some feedback that Taylor was
> getting a salary and he shouldn't be; to go back and look at the offer and, you know,
> make a revision.
> Question: And did the salary payments stop?
> Ms. DiPalma: I am not sure about that. I would have to investigate that. I think it
> would have.

Pl.'s Ex. 1, DiPalma Dep. 26:6-16.    Indeed, Mr. DeMarco also did not know if this error was

corrected or if Mr. Moore was asked to pay the salary back.    Pl.'s Ex. 3, DeMarco Dep. 23:6-24.

Also, after Moore vacated the Selling Manager position, Plaintiff directs the Court to evidence that

the position was advertised as a salaried position, however, she did not receive a salary.

Defendant disputes this evidence; again, pointing to evidence that the advertisement too was

11

erroneous.    The Court finds that a reasonable jury could infer either that Defendant's business practices are lacking, resulting in the payment of salaries that are not owed, or the payment of the salary to Moore was not an error at all.    There exist material disputes of facts that must be resolved by a jury.

There is similarly an issue of disputed fact regarding the payment of takeover compensation to Mr. Moore.    Defendant takes issue with Plaintiff offering only "self-serving testimony" indicating that she did not receive takeover commission but even DeMarco could not testify for certain that Plaintiff received the commission – testifying that Plaintiff "should have" received takeover commission.    The Court cannot, without being directed to evidence to the contrary, characterize Plaintiff's testimony as self-serving or disbelieve same simply because it differs from DeMarco's testimony.    Such determinations are within the province of the jury. Summary judgment is denied as to the NJEPA claim.

**B.      NJLAD Gender Discrimination Claims**

The Complaint alleges claims of pay and gender discrimination pursuant to the NJLAD. Specifically, Plaintiff avers that as a Sales Manager, she was treated less favorably in the assignment of sales representatives than her male counterparts.    Plaintiff also alleges that she was treated less favorably than a similarly situated male employee regarding her compensation as Selling Manager.

The NJLAD borrows the federal standard outlined by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).    *See Andersen v. Exxon Co., U.S.A.*, 89 N.J. 483, 446 A.2d 486 (1982).    Thus, the analysis of claims under the NJLAD and Title VII is generally the same.    *See Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999).

Plaintiff must satisfy the *McDonnell Douglas* three-step burden-shifting inquiry in order to prevail

on a claim for gender discrimination. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher

Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).   First, Plaintiff must establish, by a preponderance of the

evidence, a prima facie case for gender discrimination by proving that (1) plaintiff is member of a

protected class, (2) plaintiff was qualified for the position at issue, (3) plaintiff suffered an adverse

employment action, and (4) the adverse employment action supports an inference of unlawful

discrimination. *In re Trib. Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018).   "[T] here is a low bar

for establishing a *prima facie* case of employment discrimination." *Scheidemantle*, 470 F.3d at

539.   Next, the burden shifts to the employer to set forth a legitimate, non-discriminatory reason

for the adverse employment action. *Id.*   Finally, the burden shifts back to Plaintiff who "must

then show that the proffered reason is merely a pretext for actual discrimination." *Id.*   Plaintiff

can sustain this burden by "'point[ing] to some evidence, direct or circumstantial, from which a

factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons ... or

(2) believe that an invidious discriminatory reason was more likely than not a motivating or

determinative cause of the employer's action.'" *In re Trib. Media Co.*, 902 F.3d at 402.

   Defendant argues that Plaintiff cannot set forth the prima facie elements of her NJLAD

claims nor can she demonstrate pretext for unlawful discrimination.   Def.'s Br. 9.   The Court

will address the NJLAD claims concerning gender and pay discrimination for the Sales Manager

and Selling Manager positions in turn.

i.   *Sales Manager*

   Defendant first argues that Plaintiff cannot demonstrate that she was treated less favorably

than her male counterparts regarding earnings because as a Sales Manager she, and all other Sales

Managers, were paid according to the Compensation Plan.   Def.'s Br. 9-12.   Defendant contends that any difference in earnings was due to Plaintiff's poor performance.   *Id.*   Specifically, sales performance under the written Compensation Plan is determined by sales volume as measured by the VPG and APG numbers.   *Id.*   Plaintiff failed to achieve these minimum standards on numerous occasions, having been issued corrective actions and PIPs relating to her poor performance.   *Id.*   In response to allegations that Plaintiff was assigned less Sales Representatives, Defendant argues that Sales Representatives were assigned in a uniform, non-discriminatory fashion based on the Sales Representatives' connections to the organizations, and later based on a rotation schedule.   *Id.*   Plaintiff essentially argues that she establishes a *prima facie* case of less than favorable treatment in the assignment of Sales Representatives and this unfavorable treatment directly impacted her compensation.   Pl.'s Opp'n Br. 8-12.

There are disputed materials facts regarding Plaintiff's pay and gender discrimination claims in her role as Sales Manager.   Addressing the first step, Plaintiff successfully sets forth each element of the *prima facie* case to survive summary judgment.   Notably, the *prima facie* requirement is not onerous and is a burden easily met.   *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir.), *order clarified,* 543 F.3d 178 (3d Cir. 2008).   It appears undisputed that Plaintiff, as woman, is a member of the protected class, and that she was qualified for her role as Sales Manager.[13]

---

[13] To the extent Defendant argues that Plaintiff was not qualified due to her performance, courts do not consider the quality of a plaintiff's performance at the *prima facie* case step.   *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 441, 867 A.2d 1133, 1135–36 (2005).   The Court finds that the first two factors are also met as to the Selling Manager position discussed *infra*, thus, these factors will not be addressed at any other point in this Opinion.

The dispute here rests with the remaining two factors – whether Plaintiff suffered an adverse action through lower compensation resulting from Defendant's assignment of Sales Representatives and whether the adverse action gives rise to an inference of unlawful discrimination.   "To constitute an adverse employment action, the action must be 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"   *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016).   Here, part of Plaintiff's income is derived from the performance of her team.   Thus, it is reasonable to infer that Plaintiff's income would be altered by consistently having less Sales Representatives on her team, thereby constituting an adverse employment action.   *See, e.g., Dawson v. Philadelphia Media Holdings, LLC*, No. 06-3604, 2008 WL 2795832, at *16 (E.D. Pa. July 18, 2008) (failure to assign plaintiff a fair share of sales leads is sufficient to constitute an adverse employment action affecting the terms and conditions of employment).

Indeed, the record reflects that having fewer Sales Representatives on one team versus another may decrease the number of opportunities to make deals.   Pl.'s SSMF ¶ 25; Def.'s RSMF ¶ 25.   Additionally, having more Sales Representatives on one's team generally increases the number of tours a team can take which, in turn, increases the team's opportunities to make deals. Pl.'s SSMF ¶ 27.   As a corollary, more deals equal more commissions for the Sales Manager. Pl.'s SSMF ¶ 28.   Here, in response to Defendant directing the Court to evidence that Mr. DeMarco attempted to maintain equality in the assignment of Sales Representatives, Plaintiff, relying on Defendant's Sales Table reflecting team assignments, points to evidence that she was consistently assigned less Sales Representatives than Mr. DiMaggio.   Pl.'s Ex. 8, 9.   Further, while Mr. DiMaggio was a Senior Sales Manager, the title had no impact on him generally having

more Sales Representatives.   Pl.'s SSMF ¶ 29.   Indeed, Plaintiff directs the Court to evidence reflecting that in eleven out of twelve Sales Tables, Plaintiff had less Sales Representatives than Mr. DiMaggio; in about seven out of twelve Sales Tables, Plaintiff had less than Mr. Crawford.[14] Pl.'s Ex. 8, 9.   Plaintiff meets the burden of showing that she suffered an adverse employment action that supports an inference of unlawful discrimination by directing the Court to evidence reflecting male counterparts who were more often assigned more Sales Representatives.[15]   As such, Plaintiff meets the low burden of demonstrating a *prima facie* case.

Next, Defendant sets forth a legitimate, non-discriminatory reason.[16]   In this regard, the employer has the "relatively light burden" of "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).   Defendant sets forth several reasons for the differentiation in Plaintiff's compensation and/or the assignment of Sales Representatives.   Defendant states that Plaintiff was paid pursuant to the Compensation Plan which applied to all Sales Manager and, thus, any differences in her compensation were based on her poor performance.   Def.'s SMF ¶¶ 43-49, 52-64, 71.   Indeed, Plaintiff was issued corrective

---

[14] Defendant objects to Plaintiff's reliance upon, and interpretation of, the Sales Table, casting same as a new theory. Defendant also claims that witnesses were only questioned about one Sales Table.   The Sales Tables were submitted by both counsel as evidence for the Court's consideration.   The Court does not agree that Plaintiff's interpretation, mere counting of names on a list, is improper, should not be considered by the Court, or offers a new theory.   To the extent Defendant disputes the accuracy of the calculations (or interpretation of said Sales Tables), then it had the ability to counter these representations in its submissions.

[15] Plaintiff points to evidence that the foregoing occurred due to her gender indicating that DeMarco treated men more preferentially than women.   For instance, yelling at her and other women (i.e., Jennifer Cardinal), but not at men, and socializing with male coworkers both inside and outside work on a more frequent basis.   Pl.'s SSMF ¶¶ 63-68, 72.

[16] Notably, Plaintiff does not appear to contest whether Defendant states a legitimate, non-discriminatory reason(s), focusing instead on the third step of the *McDonnell Douglas* framework.   *See* Pl.'s Opp'n Br. 15-19.

actions and PIPs various times from 2010 to 2020.    Def.'s SMF ¶¶ 52-64, 71.    Defendant also provides that Plaintiff was not treated less favorable in the quality and quantity of Sales Representatives on her team, stating that Sales Representatives were assigned in a uniform, non-discriminatory fashion, based on the Sales Representative's "connections to the organization" and later based on a rotation schedule.    Def.'s SMF ¶¶ 95-98 (paragraphs 96 through 98 are disputed). Defendant further states that several Sales Representatives requested to be removed from Plaintiff's team.    Def.'s SMF ¶ 69 (this paragraph is disputed).    Defendant has met its burden.

There are disputed materials facts placing into question the reasons offered by Defendant regarding the assignment of Sales Representatives and about whether Plaintiff was subjected to less favorable treatment based on gender.    At this stage, a plaintiff is not required to conclusively rebut each articulated reason.    *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 732 (3d Cir. 1995).    Nor is a plaintiff required to produce any additional evidence beyond the *prima facie* case.    *See Fuentes*, 32 F.3d at 764.    Rather, plaintiff is only expected to point to "weaknesses, implausibility, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence," and therefore "infer that the employer did not act for the asserted non-discriminatory reasons."    *Id.* at 764–65 (internal quotation marks omitted).    In addition, where an employer "proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." *Id.* at 764, n. 7.

Here, regarding Defendant's proffer that Plaintiff was paid according to the same Compensation Plan as all other Sales Manager, this reason misses the mark on the conduct alleged

17

by Plaintiff.   Plaintiff concedes that she was paid pursuant to the same Compensation Plan, however, she contends that Defendant impacted her commission compensation by consistently assigning her less, and less seasoned, Sales Representatives.   Defendant points to evidence indicating that there was a neutral system to assign Sales Representatives with Mr. DeMarco testifying that he tried to equally assign Sales Representatives.   However, Plaintiff cites to record evidence that between July 1, 2018 to March 1, 2020, the time period applicable to Plaintiff's claims as a Sales Manager, despite the neutral system, Plaintiff was consistently assigned fewer Sales Representatives than her male counterparts, with a greater proportion being assigned to the less-lucrative Frontline.   Pl.'s SSMF ¶¶ 30-35.   Indeed, notwithstanding the neutral system, Plaintiff had less Sales Representatives than Mr. DiMaggio ninety percent of the time.   *Id.* Plaintiff points to twelve Sales Tables in support of these facts.   *Id.*   Defendant disputes Plaintiff's interpretation of the Sales Tables but it is not the role of the Court to resolve whose interpretation to credit, such a determination is within the province of the jury.

Second, Plaintiff addresses her poor performance and the reassignment of Sales Representatives from her team.   Again here, the relevant timeframe is July 1, 2018 to March 1, 2020.   Plaintiff states that while Defendant cites to her performance issues, there is no evidence she was assigned fewer Sales Representatives *because of* poor performance.   Thus, construing all evidence most favorably to Plaintiff a reasonable jury could infer that her compensation was impacted by an inadequate number of Sales Representatives or even that her poor performance (the failure to meet sales goals) was caused by inadequate Sales Representatives on her team.   Indeed, the Sales Tables show that from the September 21, 2018 Sales Table to the May 9, 2019 Sales Table, Plaintiff had less In-House Sales Representatives than DiMaggio and Crawford, and, if

18

counting both In-House Sales Representatives and Frontline Sales Representatives during the same time frame, Plaintiff also had less Sales Representatives than both males.    Pl.'s SSMF ¶¶ 30-35.

Moreover, Defendant points to evidence that Sales Representative assignments were based on many different factors, such as preps (essentially, recruits), to account for the differentiation in the assignment of Sales Representatives.    However, Plaintiff points to the testimony of Jennifer Cardinal ("Cardinal") who testified that when she was a Sales Manager, she brought in a prep who was assigned to a male's team.    Def.'s Supp. Ex. E, Cardinal Dep. 17:2-25.    Notably, Plaintiff also points to Ms. Cardinal's testimony that because she was consistently assigned less Sales Representatives than her male counterparts, she stepped down from her role as Sales Manager in order to earn more as a Sales Representative.    Pl.'s Ex. 6, Cardinal Dep. 11:22 to 12:22.

Regarding the request for reassignment of various Sales Representatives, Plaintiff points to evidence raising various material issues of fact as to the timing of these alleged reassignments. First, Plaintiff raises that the Sales Tables do not reflect that Keith Hoffman was a member of Plaintiff's team at any point between July 1, 2018 to March 1, 2020.    Pl.'s Exs. 8, 9.    Second, Plaintiff directs the Court to evidence that, although Shane Buzzell wanted to leave her team, she too requested that he be removed from her team.    Pl.'s Ex. 5, Spiewak Dep. 26:8-22. Additionally, Buzzell does not appear as a member of Plaintiff's team on any of the Sales Tables during the relevant period – Buzzell was listed, for the most part, as a member of Crawford's team. Pl.'s Exs 8, 9.    Third, Salvotore Minneci appears as a Frontline Representative assigned to Plaintiff as of September 21, 2018, however, by December 27, 2018, he appears under DiMaggio's team.    Pl. Exs. 8, 9.    Thus, as Hoffman and Buzzell never appear as members of Plaintiff's team during the relevant period, and Minneci was reassigned in September 2018, a reasonable jury

could infer that these alleged requests for reassignment have no true bearing on Plaintiff consistently having less Sales Representatives.[17]

Thus, viewing all facts and all reasonable inferences drawn from the facts in the light most favorable to Plaintiff, Plaintiff has identified facts and affirmative evidence to contradict or show inconsistencies with the proffered reasons and show that Defendant did not act for non-discriminatory reasons.   Summary judgment as to these issues is denied.

### ii.  Selling Manager

Depending on the circumstances presented, NJLAD claims based on gender discrimination in wages are analyzed under the EPA or Title VII framework.   The *Zulauf* court explained the New Jersey Supreme Court's directive on these issues:

> ... in a case brought under the LAD presenting a gender-discrimination claim based on the payment of unequal wages for the performance of substantially equal work, the standards and methodology of the EPA [Equal Pay Act] should be followed. These encompass the elements that comprise both a *prima facie* case and the corresponding transfer of the burden of proof.... If the complainant establishes a case of 'substantially equal' work that is compensated at different rates of pay, then the defendant has the burden of proof to establish by a preponderance of the evidence the affirmative defenses delineated under the EPA and incorporated into Title VII to overcome the charge of unlawful discrimination.

> We further determine that if such a complainant in an action brought under the LAD based on gender-discrimination fails to satisfy the standards of a *prima facie* case of 'substantially equal' work, as prescribed by the EPA, but the evidence demonstrates a lesser degree of job similarity that would nonetheless satisfy the less-exacting standards of a *prima facie* case under Title VII, the burden that shifts to the defendant should be only the burden of production or explanation. Thus, if such a complainant is able to show only that the work is 'similar,' then the defendant will be required to

---

[17] Regarding Sadia Hasib, the Sales Tables reflect that she was a member of Plaintiff's team from September 21, 2018, through the December 27, 2018, Sales Table.   By the date of January 2019 Sales Table, she appears on Gina Buzzell's team.   Thereafter, as reflected on a May 2019 Sales Table, Hasib appears back on Plaintiff's team where she remains until the February 2020 Sales Table.   Thus, Hasib appears as member of Plaintiff's team for most of the relevant time period.

articulate a legitimate non-discriminatory reason for the treatment of the plaintiff,
and the ultimate burden of persuasion shall remain on the plaintiff.

*Zulauf v. Stockton Univ.*, No. CV 15-3526 (RMB/JS), 2017 WL 700111, at *7 (D.N.J. Feb. 22,

2017) (quoting *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 109–10 (1990)).

Here, the Court already determined that summary judgment on Plaintiff's NJEPA claim as

related to the Selling Manager position will be denied.   Thus, as noted in *Zulauf*, considering

Plaintiff's NJLAD claim under the EPA framework, as required by *Grigoletti*, yields the same

result.   *Zulauf*, 2017 WL 700111, at *7.   As such, summary judgment is inappropriate as to

Plaintiff's NJLAD claim.

### C.      Punitive Damages

Defendant asks this Court to strike Plaintiff's request for punitive damages as said damages

are limited to particularly egregious behavior.   Def.'s Br. 27.   Plaintiff argues that the Court

should defer its decision as to the appropriateness of an award for punitive damages until trial

since it is generally an issue of fact.   "[T]he issue of punitive damages is generally a question of

fact for the jury."   *Zulauf*, 2017 WL 700111, at *11.   At this juncture, the Court, having

determined that there exist material issues of fact surrounding Plaintiff's gender and pay

discrimination claims, will follow the *Zulauf* court's approach and deny without prejudice

Defendant's request, reserving this issue to be raised at trial.

### V.      CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted in

part and denied in part.   The Court grants summary judgment as to Plaintiff's claims for

retaliation under the NJLAD and NJEPA (contained within Counts I and II) and Plaintiff's NJEPA

claim relating to the Sales Manager position only (contained within Count II).    An accompanying

Order will be entered.


Dated: January 26, 2023

KAREN M. WILLIAMS
United States District Judge